Date signed January 23, 2006



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Baltimore

In Re:                                        *

Samuel Mark,                          *    Case No.      05-90551-DK

                                              *    Chapter       13

                                              *

                                              *

            Debtor                      *

## <u>MEMORANDUM OF DECISION</u>

Before the court is the Debtor's Motion to Extend Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B).  The court held a hearing on January 11, 2006, at which Debtor presented evidence and at which conclusion the court issued its oral ruling granting the Debtor's Motion.  Based upon the factual findings of the court and for the reasons set forth on the record at that hearing and in this Memorandum, the court granted the Debtor's request to grant an extension of the automatic stay by Order entered January 13, 2006.

The instant chapter 13 case was commenced on December 13, 2005 and is therefore subject to the recent legislative amendments to the Bankruptcy Code as set forth in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), Pub. L. No. 109-8, 11 Stat. 23,

which became effective October 17, 2005.[1]  Because Debtor had been a debtor under a prior bankruptcy case that had been pending within the year prior to the filing of the instant case, but which case had been dismissed, Debtor fell subject to the exception to the continuance of the automatic stay set forth in Section 362(c)(3)(A), a new section to the Bankruptcy Code as enacted as part of the BAPCPA.

Section 362(c)(3)(A) provides:

[I]f a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)---
        (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3)(A).  The Code further provides that a party-in-interest ( including the debtor) may seek an extension of the stay beyond the 30 days as to any or all creditors and the court may order such extension if the party in interest successfully demonstrates that the later case was filed in good faith as to the creditors to be stayed.  11 U.S.C. § 362(c)(3)(B).  That subsection states:

[O]n the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates the filing of the later case is in good faith as to the creditors to be stayed. . . .

11 U.S.C. § 362(c)(3)(B).

It is pursuant to this Subsection 362(c)(3)(B) that Debtor filed his Motion to Extend Automatic Stay on December 14, 2005.  Upon review of the Motion, the court set a hearing to be held within the

---

[1]"Except as otherwise provided in this Act, this Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act."  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, at § 1501. The date of enactment was April 18, 2005.

30-day period on January 11, 2006 and sent notice to all creditors.

At the January 11, 2006 hearing, no creditors appeared to contest the Debtor's Motion, but nevertheless Debtor is required to prove that the present case was filed in good faith as to the rights of all creditors who would be stayed under such an extended automatic stay.  In this case, Debtor seeks an extension of the stay as to all creditors and so it is the interests of all creditors that this case is measured against.  There does not appear to be any dispute in the evidence and the court found the evidence credible, despite the appearance of only one witness and only one document.[2]  Mr. Mark testified truthfully.

There is currently no precedent in this district for reviewing motions to extend the automatic stay under the BAPCPA, thus the court looks first to the language of Section 362(c)(3)(B) and (C) and the attendant legislative history.  As recited above, Section 362(c)(3) permits the court to extend the stay only upon a finding of good faith.  Section 362(c)(3)(C) narrows this analysis by providing:

> For purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--
> > (i) as to all creditors, if--
> > > (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
> > > (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to--
> > > > (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
> > > > (bb) provide adequate protection as ordered by the court; or
> > > > (cc) perform the terms of a plan confirmed by the court; or
> > > (III) there has not been a substantial change in the financial or personal

---

[2]  What the witness says on the witness stand or document states in its writing is not preclusive on the court as to what the facts are.  As the finder of fact, the court may disbelieve or give scant weight even to uncontradicted evidence.

affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded--

        (aa) if a case under chapter 7, with a discharge; or

        (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

    (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor. . . .

11 U.S.C. § 362(c)(3)(C).

The statute therefore requires the court, upon a motion for extension, to first determine if there exists a presumption of the case having been filed "not in good faith."  As to an extension that would apply to all creditors, there are three subparts to this analysis, the first two being historical inquiries and the third requiring an investigation into current circumstances of the debtor.  The court reviews them in turn.

Subsection (I) inquires if the debtor had pending more than one previous chapter 7, 11, or 13 case during the preceding 1-year period.  As to the Debtor herein, only one prior case was pending during the preceding year[3] and thus, no presumption arises in response to Subsection (I).

Pursuant to Subsection (II), the court must determine whether prior to the dismissal of any of the prior cases (those having been dismissed in the preceding one year), the debtor failed either (i) to file or amend documents as required by the court, (ii) to make court ordered adequate protection payments, or (iii) to perform the terms of a plan confirmed by the court.  In the instant case, the court finds that the Debtor did not perform the terms of a plan confirmed by the court (as evidenced by the dismissal of the case for material default in plan payments).  Accordingly, under this Subsection (II),

---

[3] Debtor's prior case was 05-10655, a chapter 13 case filed on January 11, 2005 and dismissed on October 27, 2005 upon the chapter 13 trustee's motion to dismiss for a material default in plan payments.

4

there is a mandated presumption that the Debtor did not file the instant case in good faith.

Although the court finds that there exists a presumption against good faith based upon the Subsection (II), the court notes a presumption against good faith would not have arisen under Subsection (III).  That subpart requires the court to factually determine whether there has been a substantial change in the debtor's affairs since the immediately preceding case so as to lead the court to find that the current case will result in the debtor either receiving a chapter 7 discharge or being able to fully perform a plan of reorganization.  The court did find that Debtor proved a change in circumstance based on the testimony described below and therefore, no presumption against good faith arises under Subsection (III).

Nor would the presumption have arisen pursuant to an additional factor that may trigger a presumption of bad faith when applied to a specific creditor.  Subsection (ii) of Section 362(c)(3)(C), provides that if in a prior dismissed case an action to terminate or modify the automatic stay was pending, or if the action had been resolved by a termination or conditioning of the stay, then there is a presumption of bad faith as to that creditor upon the debtor's request for an extension of the automatic stay in the new case.  11 U.S.C. § 362(c)(3)(C)(ii).  In the instant case, the court takes judicial notice of the docket of the Debtor's prior case before this court.  In that case, there were no action by any creditor to terminate the automatic stay and therefore the presumption does not arise under this subsection.

If the court finds (as here) that grounds exist to presume a lack of good faith as to the intent in filing the current case, it is incumbent upon the party seeking the extension of the automatic stay to rebut that presumption by a demonstration of "clear and convincing" evidence of good faith.[4]

---

[4] If no presumption arises against good faith, the moving party still carries the burden to demonstrate good faith.  However, the language of the statute appears to suggest a lower

"Clear and convincing evidence" certainly has been defined by courts in other contexts outside this new Act..  The Fourth Circuit, noting that Congress has used the term "clear and convincing" in numerous statutes, addressed the various burdens to be assigned in *Direx Israel, Ltd. V. Breakthrough Medical Corp.*, 952 F.2d 802 (4th Cir. 1992).  The Court, citing the United States Supreme Court, wrote:

> [C]lear and convincing is a well-recognized standard in the proof scheme employed by our nations courts.  In *Addington v. Texas,* the Supreme Court identified the "three standards or levels for different types of cases" as follows: "preponderance of the evidence" is the lowest level of proof, and is to be applied in the "typical civil case involving a monetary dispute"; "beyond reasonable doubt" is the highest level of proof, and is to be applied "in a criminal case"; and "clear and convincing" is an "intermediate standard," which is to be applied in cases where interests at stake "are deemed to be more substantial than mere loss of money."  This intermediate level of proof, the Supreme Court added, is "no stranger in the civil law."  A relevant treatise, for example, defines "clear and convincing" as meaning "highly probable."  9 J. Wigmore Evidence § 2498 (3d ed. 1940).

*Id.* at 810 fn 7 (citing *Addington v. Texas*, 441 U.S. 418, 423-24, 99 S.Ct. 1804, 1807-08, 60 L.Ed. 2d 323 (1979)).  Thus, the requirement is for a level of proof beyond "preponderance," but below "beyond reasonable doubt."

Section 362(c)(3) does not include a definition of good faith or a list of factors to be considered.[5]  However, the concept of good faith has been referred to elsewhere in the Bankruptcy Code[6] since its inception in 1979.  Courts have had occasion to write as to what good faith means, and what tests should be employed in determining it in other contexts.

---

threshold of evidence as the moving party would not have to overcome the burden of the bad faith presumption by "clear and convincing evidence."

[5] Although Section 362(c)(3)(C)(I) sets forth factors that will trigger the presumption of bad faith.

[6] *See e.g.,* 11 U.S.C. § 109(c)(5)(B), 727(a)(9)(b)(ii), 1126(e), 1129(a)(3), 1325(a)(3).

It is well settled that in the absence of a legislative definition of a particular term, that the term will be ascribed the common meaning that has arisen through judicial interpretation over time.  In *Costar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544 (4th Cir. 2004), the Court of Appeals for the Fourth Circuit quoted the United States Supreme Court when writing, "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Id.* at 553 (quoting *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,* 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed. 2d 859 (1986)).  *See also The Penn Mutual Life Ins. Co. v. Woodscape L.P. (In re Woodscape L.P.)*, 134 B.R. 165 (Bankr. D. Md. 1991).  Accordingly, the court will look to judicially created definitions of good faith that are helpful to the necessary analysis under Section 362(c)(3).

In the case of *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explored the requirement of good faith in the context of a motion to dismiss chapter 11 case brought under Section 1112(b) of the Bankruptcy Code.  The Court began its analysis by adopting a good faith filing requirement, that although not expressed in the Bankruptcy Code, was mandated in order to "protect[] the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands.'"  *Id.* at 698.  The Court determined that a creditor seeking to dismiss the Chapter 11 case alleging that it was filed in bad faith, was required to prove two elements.  Those elements: objective futility and subjective bad faith were to be decided by an analysis of the totality of the circumstances.  *Id.* at 701-02.

As to the objective futility component, the Court reasoned that the proper analysis required a determination whether there was any "hope of rehabilitation, except according to the debtor's 'terminal

euphoria'[.]" *Id.* at 701-02 (quoting *In re Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986)).

The subjective inquiry into bad faith, however, was stated to be "designed to insure that the petitioner actually intends 'to use the provisions of Chapter 11. . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *Id.* at 702 (quoting *In re Victory Constr. Co.,* 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)(*Victory I*)). The Court further stated that the "aim is to determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" *Id.* (quoting *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. Bankr. App. 1983)).

Prior to its decision in *Carolin Corp.*, the Court of Appeals, in *Neufeld vs. Freeman*, 794 F.2d 149 (4th Cir. 1986), described the meaning of good faith when applied to confirmation of a chapter 13 plan. The Court held that to confirm a chapter 13 plan, the plan had to be proposed in good faith as provided by Section 1325(a) of the Bankruptcy Code.

In the *Neufeld* decision, the Court re-enumerated factors first announced in the earlier decision of *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982),[7] and then added one more. These factors

---

[7] In *Deans v. O'Donnell*, a case analyzing good faith in the context of Section 1325(a)(3), the Court of Appeals initially noted that Congress had not provided a definition of good faith in the statute or in the legislative history. *Id.* at 969. The Court further stated: "While no precise definition can be sculpted to fit the term 'good faith' for every Chapter 13 case, we think the generally accepted definition of 'good faith' as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976)(repealed), provides the general parameters: . . . 'Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provision, purpose, or spirit of [the Chapter] in the proposal or plan. . . .'" *Id.* at 972 (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)).

8

included, among other things, employment history, unsecured claims, past bankruptcy filings, honesty in the schedules, any exceptional circumstances facing the debtor, what changes had occurred, the economic basis for the current case, the motivation of the debtor in the current case and the prepetition conduct of the debtor.  *Id.* at 152-53.

That latter factor was added in the context of an argument as to whether or not a non-dischargeable debt in a Chapter 7 resulting from some egregious conduct of the debtor should weigh as to the ability of the debtor to obtain a Chapter 13 discharge, which would have included such debt. *Id.*  The ultimate purpose of this inquiry, according to the Court of Appeals, was "to determine whether or not, considering 'all militating factors,' there has been 'an abuse of the provisions, purpose, or spirit' of Chapter 13 in the proposal or plan.'" *Id*. at 152 (quoting *Deans v. O'Donnell*, 692 F.2d at 972).

In the instant case, the court determines that the *Neufeld* decision and *Carolin Corp.* have some bearing on what definition of good faith should be applied to extend the automatic stay and in the absence of clear congressional intent to the contrary, the court must apply what prior judicial interpretations of terms are available.   The court finds that it should examine ultimately the question which has been framed and stated in *Neufeld*.

To determine whether or not there has been an abuse of the provisions, purpose or spirit of Chapter 13, the court will look to the factors announced in *Neufeld*, as well as the objective futility standard and subjective intent standards pronounced in the dismissal context in the chapter 11 *Carolin Corp.* decision.  The difference between the analysis required under *Carolin Corp.* and that required pursuant to Section 362(c)(3) includes that in the Section 362(c)(3) analysis, the burden does not rest on the party seeking dismissal as in Section 1112(b), but on the party seeking the extension of automatic stay (most likely the debtor).  So, instead of the court determining whether a party has proven

objective futility and subjective bad faith, the court must determine whether the movant has *dis*-proved any of those factors.

In applying these standards to the instant case, the court finds that the evidence clearly demonstrated that the Debtor's prior case was dismissed after Debtor lost his source of income that he had expected and had received, and which would have funded out the confirmed plan in the prior case. After examining the record of the prior case, the court takes judicial notice of the fact that there was entered a wage garnishment order to automatically deduct plan payments from the Debtor's employer. When Debtor fell into default under the plan payments, which led to the case's dismissal, it is clear that the employer was no longer paying under that wage order (that Debtor was no longer receiving that income).

Secondly, the court looks at the proposed Chapter 13 plan, as *Neufeld* describes. In the current proposed plan, the percentage proposed repayment is 100%. Debtor is not trying to slide through the bankruptcy by doing the bare minimum that might be necessary to obtain a discharge and leave creditors substantially without any benefit from the reorganization. Quite to the contrary, Debtor seeks to make full repayment to creditors that file and have allowed claims.

The court next evaluates the Debtor's financial situation. This includes the *Carolin Corp.* factor of whether or not there is objective futility. It certainly would be objective futility if the Debtor's circumstances had not materially changed from that which caused the default in plan payments in the prior case. However, the Debtor's testimony indicates two important facts. One, that Debtor has a new business from which he expects to receive a substantially larger income to be made available to allow him to pay the plan payments. While by itself would not clearly and convincingly indicate to the court that the case is not futile, the second fact is that this new employment *is* presently generating a higher

10

level of income.  Debtor did not merely testify to an expectation, but that he has received an actual profit under the contract and is moving forward successfully.  The evidence demonstrates that he has a reasonable expectation based upon present facts that he will generate sufficient income to succeed in his financial reorganization.

The court also has accessed the court's records concerning the prior filings of bankruptcy by this Debtor and takes judicial notice of its record.  This is the second case filed by Debtor.  The court certainly does not suggest a *per se* test regarding the number of prior cases, but given the circumstances finds that number herein consistent with other facts presented that Debtor is proceeding in good faith and not intent on abusing the provisions and spirit of the Bankruptcy Code and Chapter 13.  This is not a serial filer, as that term is sometimes used to describe a person who files time and time again just to daisy-chain automatic stays to the detriment of creditors, but without any real prospect and intent to reorganize.  There is a reasonable explanation for why there is a second case and the prospects of the second case certainly look much different than the circumstances that existed at the end of the first case.

Given all of these facts, the court concludes that the Debtor's subjective intent in this case is to reorganize and pay creditors and that objectively, Debtor has a reasonable prospect of doing so. These facts and conclusions are proven by clear and convincing evidence.  The court reaches the final conclusion that the current case is not an abuse of the provisions, purpose or spirit of Chapter 13 and therefore, is filed in good faith.

For these reasons, the court has granted the Debtor's Motion to Extend Automatic Stay.


cc:     Debtor
        Debtor's counsel
        Chapter 13 Trustee
        Office of United States Trustee

11

All creditors and parties in interest

**End of Memorandum**